IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DENISE O.-B.,** | ) |
|     **Plaintiff,** | ) No. 21 C 5892 |
| v. | ) Magistrate Judge M. David Weisman |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Denise O.-B. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

### Background

On April 11, 2019, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 17-33, 91-146.) The Appeals Council declined review (R. 1-4), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged amended onset date of March 16, 2019. (R. 19.) At step two, the ALJ found that plaintiff has the severe impairments of osteoarthritis of both knees, status-post arthroscopy of the left knee, osteopenia, and obesity. (R. 20.) At step three, the ALJ found that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment. (R. 22.) At step four, the ALJ found that plaintiff cannot perform any past relevant work but has the RFC to perform light work with certain exceptions. (R. 23, 30.) At step five, the ALJ found that plaintiff had acquired work skills from jobs from past relevant work that are

transferable to other occupations with jobs existing in significant numbers in the national economy, and thus she is not disabled. (R. 31-32.)

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Chandler, plaintiff's treating orthopedist. The ALJ said:

> The opinion at Exhibit 19F, by treating orthopedist Dr. Chandler, who concludes that the claimant is unable to do full-time sedentary work, is unpersuasive, as it is not supported by his own examinations, nor the findings in the remainder of the treatment record, including findings by the claimant's primary care physician and oncologist. Dr. Chandler's exams consistently show the claimant with 5/5 strength overall, no instability or swelling, and with intact sensation and reflexes, despite antalgic gait, joint tenderness, and crepitus. Three days prior to the claimant's left knee surgery, she came to her consultative exam without her cane, and was able to ambulate without it. Although the claimant initially used a cane after her early 2020 left knee surgery, in less than six months, with injections to both knees, she no longer presented to exams with an assistive device. Dr. Chandler further opines that the claimant would have "constant" interference with attention and concentration from symptoms, which is also unsupported by objective examinations. In fact, his exams consistently find the claimant to be mentally alert and oriented, and in no distress, which would reasonably affect attention and concentration.

(R. 29-30) (citations omitted).

Plaintiff contends that the ALJ's evaluation of Dr. Chandler's opinion violates SSA regulations. Those regulations instruct ALJs to consider a number of factors when they assess opinions, the most important of which are how well the objective medical evidence and supporting explanations offered by the doctor support his opinion and how consistent his opinion is with evidence from other sources. 20 C.F.R. § 404.1520c. Specifically, plaintiff says the regulations:

> [R]equired the ALJ to consider how the evidence supported and was consistent with Dr. Chandler's opinion. The ALJ did not do so here. Instead, the ALJ jumped right into an identification of evidence that *did not* support and was inconsistent with the opinion. This was in error, for the ALJ selectively considered the evidence by doing so.

(ECF 14 at 3) (emphasis in original). The regulations do not, however, require the ALJ to identify every piece of evidence that supports and runs counter to her assessment. They simply require her

3

"[to] explain how [she] considered the supportability and consistency factors for a medical source's . . . opinions," 20 C.F.R. § 404.1520c(b)(2), which she did.

The Court is also not persuaded that the ALJ only considered evidence that undermined Dr. Chandler's opinion. In fact, the ALJ recounted evidence favorable to plaintiff's claim, such as, even after surgery, plaintiff had abnormal gait, tenderness of the left knee joint, swelling, reduced range of motion, 4/5 strength, and crepitus. (R. 25-26.) Because, however, the record showed that these issues resolved (*see id.* at 26), the ALJ said this evidence was not supportive of Dr. Chandler's opinion.[1]

Plaintiff cites the same evidence to argue that the ALJ did not create a logical bridge between the evidence and her conclusion:

> While the ALJ may have mentioned the presence of antalgic gait, joint tenderness, and crepitus, the ALJ wholly failed to explain why these were not as persuasive to her as the normal findings were. In effect, the ALJ . . . concluded that the evidence was insufficient to support Dr. Chandler's opinion, but provided no explanation for *why* that was the case . . . .

(ECF 14 at 7) (emphasis in original). But, as noted above, the ALJ said the evidence showed that the adverse findings resolved in the months after plaintiff's left knee surgery. (R. 26.) That was an adequate explanation for why the ALJ deemed this evidence not supportive of Dr. Chandler's opinion.

The ALJ also rejected Dr. Chandler's opinion that plaintiff's symptoms constantly interfere with her concentration and attention:

> Dr. Chandler further opines that the claimant would have "constant" interference with attention and concentration from symptoms, which is also unsupported by objective examinations. In fact, his exams consistently find the claimant to be mentally alert and oriented, and in no distress, which would reasonably affect attention and concentration.

---

[1] In doing so, the ALJ did not play doctor, as plaintiff contends. (*See* ECF 14 at 5.) Rather, she simply evaluated the evidence.

4

(R. 30.) Plaintiff contends that notations in her medical records that she was alert and oriented do not support the ALJ's rejection of Dr. Chandler's opinion. Plaintiff argues that "alert" and "oriented" are terms of art that have no bearing on plaintiff's ability to concentrate at work. Even if that is true, an issue the Court does not decide, plaintiff does not identify any evidence that supports Dr. Chandler's opinion about plaintiff's mental state that the ALJ failed to evaluate.[2] The lack of evidence supporting Dr. Chandler's opinion about plaintiff's mental capacity to work supports the ALJ's decision.

Lastly, plaintiff asserts that the ALJ did not build a logical bridge between plaintiff's daily activities and the ALJ's conclusion that they do not support Dr. Chandler's opinion. Even if that is true, for the reasons discussed above, the ALJ's rejection of Dr. Chandler's opinion would still be supported by substantial evidence. Thus, the presence or absence of a bridge between plaintiff's activities and the ALJ's rejection of Dr. Chandler's opinion is not a basis for remand.

Next, plaintiff says the ALJ ignored evidence that she suffers from fatigue. In fact, though "[the ALJ was] not required to address every piece of evidence," *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (per curiam), she addressed the evidence of fatigue at some length. (*See* R. 28-29.) Moreover, none of the evidence plaintiff cites states that her fatigue is so severe that she cannot perform sedentary work. (*See* ECF 14 at 10.) In short, the ALJ's refusal to find that plaintiff's fatigue is work preclusive is supported by substantial evidence.

Plaintiff also argues that the ALJ's symptom evaluation is erroneous because she based it solely on plaintiff's activities of daily living. (*Id.* at 12-13.) It is clear from the decision, however,

---

[2] The Court acknowledges that the terms "alert" and "oriented" are used by different medical personnel for different purposes. An EMT responding to an accident may use those terms to document consciousness but not much more. A medical provider in the psychiatric realm may use these terms to document a patient's lucidity. Even discounting the ALJ's rationale to the extent it relied on "alert" and "oriented," for the reasons explained, we find the ALJ's conclusion on this point was not erroneous.

5

that the ALJ did no such thing. Rather, she said plaintiff's symptom allegations were inconsistent with the record evidence, which refuted her claims that she needed a cane and "her physical issues have worsened since completing radiation treatment for left breast cancer in early 2019, and since undergoing left knee surgery in early 2020."[3] (R. 27-28.) The ALJ noted that plaintiff generally used over-the-counter medications for pain relief and had only used a prescription pain reliever on three occasions. (R. 28.) In addition, the ALJ said the medical evidence did not suggest that plaintiff needs to elevate her leg as she claimed, sustained frequent falls, or suffered from fatigue or cognitive difficulties. (*Id.*) Because the ALJ's symptom evaluation was quite plainly not based solely on plaintiff's daily activities, plaintiff's argument to the contrary is not a basis for remand.

Lastly, plaintiff argues that the ALJ's finding that plaintiff has transferable skills violated SSA program policy statement 82-41. In pertinent part the policy statement says: "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." SSR 82-41, 1982 WL 31389, at *7 (Jan. 1, 1982).

The ALJ found that plaintiff's past relevant work was a composite job of insurance clerk and administrative clerk. (R. 31.) She found, based on the VE's testimony, that as part of performing the composite job, plaintiff did all of the parts of the insurance clerk job, and thus has all of the skills required to perform the insurance clerk job.[4] (*Id.*) Thus, the ALJ concluded that plaintiff has transferable skills from the insurance clerk portion of the composite job. (*Id.*)

---

[3] Plaintiff contends that the ALJ improperly found the lack of PT records to be more probative of plaintiff's symptom allegations than the records of the surgery and injections she received for her knee. But the ALJ explicitly confined her discussion regarding lack of PT records to the period *after* plaintiff's 2020 surgery and noted that, after that point, plaintiff only received "a handful of knee injections." (R. 27.) Because the ALJ explained how she weighed the evidence and her conclusion is supported by substantial evidence, it is not a basis for remand.

[4] Though plaintiff says the ALJ should not have accepted the VE's testimony that plaintiff did all of the parts of the insurance clerk job, weighing the evidence is the ALJ's province.

The ALJ identified the specific occupation—insurance clerk—to which plaintiff's skills are transferable but she did not identify the transferable skills. It was not necessary to do so in this case, however, because the ALJ found that plaintiff acquired the skills necessary to be an insurance clerk by performing the insurance clerk job. Under these circumstances, there would be no point to requiring the ALJ to recite the skills plaintiff acquired from doing the insurance clerk job and explain how they transfer to the insurance clerk job.

## Conclusion

For the reasons set forth above, the Court affirms the Acting Commissioner's decision, grants the Acting Commissioner's motion for summary judgment [19], and terminates this case.

**SO ORDERED.**               **ENTERED:  January 4, 2023**

_M. David Weisman_

**M. David Weisman**
**United States Magistrate Judge**